# Salem
## MARCELLUS CURTIS MOSS
v.
## COMMONWEALTH OF VIRGINIA
No. 0129-87-3
Decided October 18, 1988

COUNSEL

Sidney H. Kirstein (McRorie, Kirstein & Gay, on brief), for appellant.

Eugene Murphy, Assistant ·Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**HODGES, J.** — Marcellus Moss was convicted in a jury trial of possession of cocaine in violation of Code §18.2-250. He was sentenced in accordance with the jury's verdict to three years' imprisonment. On appeal, Moss contends that he was illegally detained by the police, thereby rendering the cocaine seized as a result thereof inadmissible. We agree and reverse. Because we find this issue to be dispositive, we need not address the other issues raised.

At approximately 9:55 p.m. on October 9, 1986, Officer Donald Dalton of the Lynchburg Police Department drove his patrol wagon south on Fifth Street past the intersection of Fifth and Taylor Streets. He observed Moss and two other people standing on the corner. Moss caught the officer's attention because his arms were extended in front of him and he was making a twisting motion with something between his fingers. Officer Dalton continued watching Moss in his mirror as he drove down the street. He then turned and drove to a position two blocks from Moss, where he exited his vehicle and positioned himself nearby in a private yard

behind some bushes.

Moss and his companions approached the area on foot. When they were directly in front of him, Officer Dalton jumped out and shined the flashlight on Moss. Moss froze for a few seconds and Officer Dalton observed a white object in his fingers. Moss placed his hand behind him and when his hand reappeared it was empty. Officer Dalton found a white object containing cocaine directly behind Moss's left foot. He then placed Moss under arrest.

Moss contends on appeal that Officer Dalton had no specific, objective basis for stopping him, thereby rendering the stop unconstitutional and the seized cocaine inadmissible.[1] The Commonwealth, on the other hand, argues that the exclusionary rule is inapplicable because there was no stop or search.

At the outset, we reject the Commonwealth's argument that the encounter between Officer Dalton and the defendant did not amount to a "stop," but was merely a confrontation during which the officer asked some questions. Citing *Florida v. Royer*, 460 U.S. 491, 497 (1983), the Commonwealth points out that when a police officer approaches and addresses questions to people in public there is no seizure within the meaning of the fourth amendment. The Commonwealth contends that the evidence does not support the conclusion that Moss was detained.

■ A "seizure" for purposes of the fourth amendment occurs when the "circumstances . . . amount to a show of official authority such that 'a reasonable person would have believed that he was not free to leave.'" *Royer*, 460 U.S. at 502 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1967). Upon review of the record, we conclude that the manner in which Officer Dalton suddenly confronted Moss with a flashlight amounted to a "seizure" of Moss's person. Officer Dalton testified that the flashlight he used was "bright and has an effect of blinding the other parties, which stuns them." The blinding and stunning effect of the flashlight in the hands of a uni-

---

[1] While Moss's challenge at trial to the validity of his seizure and the admissibility of the cocaine would have been more appropriate and better articulated in the form of a pretrial motion to suppress, counsel's pretrial objection, although it allowed the jury to hear the challenged evidence, was sufficient to preserve the matter for appeal.

formed officer who is asking questions amounts to a "show of official authority" such that a reasonable person would conclude he was not free to leave.

Having found that Officer Dalton "seized" Moss, we must now determine whether the officer had adequate grounds to make the stop. "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials . . . in order 'to safeguard the privacy and security of individuals against arbitrary invasions.' " *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979) (footnote and citation omitted). It is well-established that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 U.S. at 22. However, the officer must have a "reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown v. Texas*, 443 U.S. 47, 51 (1979). In *Brown*, police officers stopped the ndant in an area with a high incidence of drug traffic, because as one officer testified the situation " 'looked suspicious and we had never seen that subject in that area before.' " *Brown*, 443 U.S. at 49. The Supreme Court found the stop on these grounds violated the fourth amendment. *Id.* at 53. The Court held that "[i]n the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference." *Id.* at 52.

Upon review of the record in the present case, we find that the officer could not reasonably have suspected Moss of criminal activity based on what he observed. Officer Dalton admitted at trial on direct examination that he "couldn't make out what it was" in Moss's hand when he drove by. On cross-examination, when asked whether the object in Moss's hands could have been a popsicle stick, matches, or any type object, Officer Dalton again responded, "I couldn't tell what it was." The officer's own testimony reveals that Moss's seizure was based more on an "inchoate and unparticularized suspicion or 'hunch,' " *Terry*, 392 U.S. at 27, than on a reasonable suspicion based on objective facts. Therefore, finding that the police officer lacked adequate grounds to stop Moss, we hold that the stop was illegal and the cocaine seized as a result

thereof was improperly admitted into evidence.

■ In so holding, we reject the Commonwealth's argument that Moss abandoned the cocaine and, therefore, lacked standing to challenge its admission into evidence. "While it is true that a criminal defendant's voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct." *United States v. Beck*, 602 F.2d 726 (5th Cir. 1979) (citations omitted). Here, it is clear that the contraband was abandoned because of the illegal stop; thus, it was not a truly voluntary abandonment.

Accordingly, for the foregoing reasons, the judgment is reversed and dismissed.

*Reversed and dismissed.*

Coleman, J., and Duff, J., concurred.