## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

    v.

Clyde Mitchell Hargrove

July 9, 1990

Case No. 90-132

By JUDGE JAY T. SWETT

The defendant has filed a motion to suppress on the basis that the initial stop of his automobile on February 7, 1990, violated his constitutional rights under the Fourth Amendment. The following testimony was presented at the suppression hearing.

Early on the morning of February 7, 1990, four Charlottesville police officers were on routine patrol near Dice and Sixth Streets. The officers were in plain clothes and in an unmarked vehicle. Near the intersection of Seventh and Dice Streets, the officers observed a vehicle pull up to a group of six to eight men. One of the men left the group and walked toward the vehicle. Two of the officers stated that the person who walked toward the vehicle first looked up and down the street as if he were scanning the area. As the man approached the car, the officers testified that the man bent down, reached into the vehicle, removed his hand and walked back to the group. The officers indicated that the man had his hand in the car from three to five seconds. Neither officer saw anything exchanged between the man and any of the vehicle's passengers. Neither officer testified as to any conversation between the man and the car's passengers. The car as well as its occupants were unknown to the officers. The man who left the group to approach the car was also unknown to the officers. Believing

that they had observed a drug transaction, the officers pulled the automobile over shortly after it left the group.

The defendant and two other men testified at the suppression hearing. They testified that they had come to the area of Sixth and Dice Streets for the purpose of purchasing illegal drugs. One of the vehicle's occupants got out of the vehicle approximately one block from the corner of Sixth and Dice Streets. The apparent purpose of this was for the man to approach another group to see if he could purchase drugs. After several minutes, the vehicle approached the group of men at Dice and Seventh Streets. The man who had previously been let out left the group and approached the car. The extent of the conversation was that there were "no happenings" which is street language that there were no drugs to purchase. The three witnesses denied that the man put his arm inside the car. The vehicle then left and was shortly pulled over by the police.

The Commonwealth argues that the stop of defendant's vehicle is a permissible stop under *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* authorizes a warrantless "stop and frisk" of a vehicle provided that the officer has sufficient specific objective facts to create a reasonable suspicion that the occupants of the vehicle may be involved in criminal activity. The test is based upon the totality of the circumstances viewed objectively and is not based upon a police officer's subjective intent.

The objective facts relied upon by the Commonwealth in this case can be summarized as follows. The two officers had attended certain schools that emphasized certain "street" techniques to assist them in identifying potential drug transactions. Based upon this training, the officers relied upon the following facts to justify the stop of the defendant's vehicle: the area of Dice and Seventh Streets was known to them as an area conducive to open drug transactions; a crowd of six to eight men was standing on a corner; the activity was observed at approximately 1:00 a.m.; the man who left the group to approach the car looked both ways as he approached the vehicle; that the man put his hand in the vehicle for three to five seconds; and finally that he removed his hand and appeared to hurry back to the group of men on the corner. Neither officer saw anything exchanged between the occupants of

the vehicle or the man who left the group to approach the vehicle. The officers did not hear any conversation between the men. The officers did not observe any suspicious activity in the vehicle, nor did they observe suspicious activity by the group of six to eight men. The officers did not know the occupants of the vehicle nor anyone in the group as having a history of drug activity. Finally, the officers did not see the vehicle being operated or driven in violation of any traffic laws.

Looking at the evidence of the Commonwealth objectively, it is difficult to see how these facts create a reasonable suspicion that the occupants of the vehicle had engaged in criminal activity. The training received by the officers at school is certainly an important consideration. However, it is difficult to see how knowledge of certain factors as described by the officers here differs from a "drug courier" profile that was held to be an improper basis for a vehicle stop in *Taylor v. Commonwealth*, 6 Va. App. 384 (1988).

In *Moss v. Commonwealth*, 7 Va. App. 305 (1988), an officer observed three men standing on a corner. One of the men caught the officer's attention because of the manner in which his arms were extended and the manner in which the suspect was making a twisting motion with something in his fingers. As the men walked down the street, they were stopped by the officer who then observed a white object in the suspect's fingers. The object turned out to be cocaine. In finding that the initial stop was unconstitutional, the Court found that the officer could not have reasonably suspected that criminal activity had occurred based upon these observations. This case is similar to *Moss*. The evidence described by the police officers here would at the most have justified further investigation or surveillance, but on its own is insufficient to justify stopping the defendant's vehicle.

Cases relied upon by the Commonwealth do not apply. In *Bosworth v. Commonwealth*, 7 Va. App. 567 (1989), an officer stopped a vehicle on Interstate 95 after having followed the vehicle because the vehicle appeared to meet a drug courier profile. However, the driver of the vehicle was speeding and this was the basis for the stop and not the drug courier profile. Here, the officers did not observe any traffic violation on the part of the defendant.

The Commonwealth also relies on *Richards v. Commonwealth*, 8 Va. App. 612 (1989). In *Richards*, police officers observed a passenger at an airport. Once they became suspicious of the passenger, they approached the passenger to ask questions. Based on those questions, the officers asked the person if they could conduct a search. The search produced illegal drugs. In affirming the conviction, the Court of Appeals found that the defendant was not detained. Rather, the initial contact with the defendant was a "consensual encounter" under *Florida v. Rodriguez*, 469 U.S. 1 (1984). Therefore, the Fourth Amendment did not apply to stop in *Richards*. The Fourth Amendment did not apply until the request was made to conduct the search. The Court went on to find that Richards consented to the search. Here, there is no question that stopping the defendant's vehicle was a stop that triggered Fourth Amendment protection.

Based upon the evidence presented, the court grants the motion of the defendant on the basis that the stopping of the defendant's vehicle on February 7, 1990, was a violation of the defendant's Fourth Amendment rights.