## Norfolk

RICHARD NATHANIEL GOODWIN

v.

COMMONWEALTH OF VIRGINIA

No. 0667-89-2

Decided December 4, 1990

COUNSEL

Russell C. Williams, Assistant Public Defender, for appellant.

M. Katherine Spong, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—On March 22, 1989, Richard Nathaniel Goodwin entered a conditional plea of guilty to one count of possession of cocaine and one count of possession of a concealed weapon after his motion to suppress the cocaine and the weapon was denied. The trial court sentenced him to five years in the penitentiary, but suspended the sentence on the condition he serve nine months in jail in the form of work release. On appeal, Goodwin contends the trial court erred in denying his motion to suppress evidence.[1]

At about 5:00 p.m. on December 29, 1988, Richmond police officers Vickers and Kelly were in their car patrolling the Gilpen Court area of the 1100 block of St. James Street in Richmond. Gilpen Court was considered a high crime area and the officers previously had made numerous arrests in the vicinity. Upon approaching St. James Street, the officers saw Goodwin walk out from an open area behind some apartments and toward the street. It was a cold day and Goodwin was wearing a bulky winter coat

---

[1] Goodwin also contends that he was the victim of an unlawful "sweep search" in an "officially targeted" neighborhood. Since this contention was not raised in the petition for appeal, we cannot address the issue. Rule 5A:12(c).

that was tied around the waist. In the officers' estimation, when Goodwin appeared to see the police car he "jammed" his hand in his coat pocket. The officers did not see any item or article in Goodwin's hand or coat pocket. The officers were concerned that Goodwin had shoved a weapon into his pocket, so they pulled their car up to where he was approaching the street. As Goodwin began to walk down the sidewalk past the rear of the car, the officers got out and approached him. They told Goodwin that they wanted to pat him down for weapons. Goodwin consented and then told the officers that he was carrying a "little knife." When Goodwin began to reach into a pocket to retrieve the knife, the officers stopped him and grabbed it themselves. The knife found was, in the officers' estimation, not accurately described as a "little knife." Thereupon, they arrested Goodwin for carrying a concealed weapon. Subsequent to the arrest, the officers searched the coat pocket into which Goodwin shoved his hand. Finding nothing, they then searched his other pockets and found a small plastic bag containing cocaine.

■ At the suppression hearing, the trial court found, without any additional explanation, that an "investigatory situation" arose because the officers saw Goodwin put his hand in his pocket in a quick motion. Besides finding an "investigatory situation" existed, the trial court made no other express findings for the record before denying Goodwin's motion to suppress. "While we consider the sufficiency of the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom, . . . we cannot on review disregard credible, unimpeached evidence of the Commonwealth which exculpates the defendant." *Harward v. Commonwealth*, 5 Va. App. 468, 479, 364 S.E.2d 511, 516 (1988) (citations omitted).

■ Before addressing whether Goodwin's fourth and fourteenth amendment rights were violated, we must first address the threshold question of whether a "stop" occurred prior to the time the police found the knife. A "stop" or "detention" occurs when the "circumstances . . . amount to a show of official authority such that 'a reasonable person would have believed he was not free to leave.'" *Florida v. Royer*, 460 U.S. 491, 502 (1983) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)); *see also Moss v. Commonwealth*, 7 Va. App. 305, 307, 373 S.E.2d 170, 171-72 (1988). At the suppression hearing, officer Vickers con-

ceded he detained Goodwin. The facts support that concession. The officers stopped their car next to Goodwin and told him they wanted to pat him down for weapons. Since the record does not indicate otherwise, we assume the trial court also found there was a "stop" or "detention."

We must next decide whether the police had proper grounds for stopping Goodwin.[2] "In order to determine what cause is sufficient to authorize police to stop a person, cognizance must be taken of the 'totality of the circumstances — the whole picture.' Assessing that whole picture, 'the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Leeth v. Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982)(quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)); *see also Williams v. Commonwealth*, 4 Va. App. 53, 65, 354 S.E.2d 79, 85 (1987); *Iglesias v. Commonwealth*, 7 Va. App. 93, 100, 372 S.E.2d 170, 174 (1988)(*en banc*). While considering "trained police officers may be 'able to perceive and articulate meaning to given conduct which would be wholly innocent to the untrained observer,'" the court must determine whether reasonable suspicion exists based on objective standards "rather than on the police officer's subjective intent." *Iglesias*, 7 Va. App. at 101, 372 S.E.2d at 174-75 (quoting *United States v. Gooding*, 695 F.2d 78, 82 (4th Cir. 1982)).

In a case based on comparable facts, this court found police lacked adequate grounds to stop a person. *Moss v. Commonwealth*, 7 Va. App. 305, 373 S.E.2d 170 (1988). In *Moss*, while patrolling in his car, a police officer observed the defendant and two other people at a street corner. The police officer stopped the defendant because he had his arms extended and was making a twisting motion with something between his fingers. The officer's own testimony revealed that he could not tell what was in the defendant's hand and that the stop was based more on the officer's "'inchoate and unparticularized suspicion or "hunch"'" . . . than

---

[2] "Any police officer may detain a person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or possesses a concealed weapon in violation of § 18.2-308, and may require of such person his name and address. Provided further, that such police officer may, if he reasonably believes that such person intends to do him bodily harm, search his person for a dangerous weapon . . . ." Code § 19.2-83.

on a reasonable suspicion based on objective facts." *Id.* at 308, 373 S.E.2d at 172 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Based on the record in the present case, we find the police lacked adequate grounds to stop Goodwin. Officer Vickers testified that it was his practice when patrolling the Gilpen Court area to look for a reason to pat down a person. He testified, however, the reason must be more than simply putting a hand in a pocket. He further testified that when he leaves his car and pats down somebody, he almost always finds a weapon, usually a gun.

This incident began when the police officers saw Goodwin and another man walk out from an open area behind some apartment buildings. Goodwin then walked toward the street where the police officers were patrolling in their car. The police officers testified that the only reasons they suspected Goodwin of carrying a weapon were that no one else was in the area and Goodwin shoved his hand in his coat pocket, apparently upon seeing the approaching patrol car. Goodwin did not try to avoid or flee from the police when he saw them. He even walked toward the patrol car before attempting to walk past it. Further, according to the record, the police had no information, such as a tip or police report, suggesting that Goodwin was involved in criminal activity.

As in *Moss*, the police officers, relying on their experience and instincts, saw a suspect doing something with his hands. Based primarily on that action, which they considered suspicious, they stopped the suspect. While the police are regularly required to rely on their experience and instincts, the fourth amendment requires, at a minimum, that they possess articulable facts giving rise to reasonable suspicion of criminal activity before depriving a citizen of his or her privacy or freedom of movement. In our judgment, on these facts, the officers did not meet that burden. This court recognizes that officers Vickers and Kelly were patrolling in a high crime area and that Goodwin was wearing a bulky coat. Had there been any other objective basis for suspecting misconduct by Goodwin, the police might have been justified in stopping him. However, finding that the police officers lacked adequate grounds to stop Goodwin, we hold that the stop was illegal and that the cocaine and knife seized as a result thereof were improperly admitted into evidence.

Accordingly, for the reasons stated above, the judgment is reversed.

*Reversed.*

Coleman, J., and Keenan, J., concurred.