## Richmond

MARVIN PERNELL ADAMS

v.

COMMONWEALTH OF VIRGINIA

No. 0589-89-2

Decided March 12, 1991

COUNSEL

Russell C. Williams, Assistant Public Defender (Office of the Public Defender, on briefs), for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—In this appeal from a conviction for possession of a firearm by a convicted felon, Marvin Pernell Adams contends that the investigatory stop and frisk by Detective Clarke violated his fourth amendment rights. We agree and hold that the the information contained in the affidavit for the search warrant along with other circumstances known to Clarke did not constitute a reasonable suspicion to stop and frisk Adams.

Clarke was given a warrant to search a room numbered 214 in a motel on Midlothian Turnpike. The affidavit for the warrant stated that an informant had seen a light-skinned black male with long curly hair and a moustache, known as "Mousey," distributing cocaine from this location. The informant also had said that "Mousey may be wanted by [the] police and may be armed and dangerous." Upon his arrival at the motel to execute the search warrant, Clarke learned that the room had been vacated and cleaned and that the occupants had left the motel. He was also told that two black males had left the motel on foot, headed west on Midlothian Turnpike.

Fifteen to twenty minutes later, Clarke spotted two black males at a pay phone on Midlothian Turnpike about one-quarter mile west of the motel. Clarke approached Adams, who he believed fit the affidavit's description of the suspect, identified himself as a police officer, frisked Adams, and found a loaded .22-caliber automatic handgun in Adams' pants pocket. Adams was arrested for possessing a concealed weapon. No drugs were found during the search. No proof in this record established that Adams was wanted by the police.

Adams contends that Clarke unlawfully stopped and searched him. We agree.

"The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials . . . in order 'to safe-guard the privacy and security of individuals against arbitrary invasions.'" It is well-established that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." However, the officer must have a "reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." . . . "[I]n the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference."

*Moss v. Commonwealth*, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988) (citations omitted).

Although Detective Clarke testified that the occupants of the room had departed the motel before he executed the search warrant, the record contains no description of the occupants who had vacated the room that day. The motel manager told Clarke that two black males had left the motel on foot heading westbound; however, the evidence does not prove whether either of the two males who left the motel fit the general description for "Mousey" or whether either had been in the room that was searched. Moreover, this record contains no confirmation that anyone fitting the description of "Mousey" ever occupied or was present in the room. The record also contains no testimony that drugs or drug paraphernalia were found in the room.

When Clarke found nothing in the room or in the area around the room that confirmed the information supplied by the informant, he looked around the outside of the motel and searched along the street. Fifteen to twenty minutes after he left the motel, Clarke saw two black men using a public telephone near D.J.'s Lounge — seven blocks from the motel. The men walked to another public telephone near an apartment complex where there is often "a considerable amount of foot traffic." Clarke stopped Adams about a quarter of a mile from the motel.

■ "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' " *Davis v. Mississippi*, 394 U.S. 721, 726-27 (1969). "[T]he underlying command of the Fourth Amendment is always that . . . seizures be reasonable." *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985). There was nothing reasonable in Clarke's seizure of Adams. Clarke simply made a general search of a large area near the motel room mentioned in the search warrant, and stopped a man who fit a general description of being black with light skin and long hair. Clarke identifies no conduct which suggested at that time that a crime was occurring or had occurred. He points to nothing that distinguishes Adams from any other black male with light skin and long hair. *Compare United States v. Rosario*, 543 F.2d 6, 7-8 (2d Cir. 1976)(description of accused as " 'unknown male - possibly called Angel - M/W/28 yrs., 5'8" tall, 155 lbs, light complexion, wearing blue trousers, multi colored shirt and sneakers' " is so amorphous that it "would fit a very large group of ordinary young men").

■ No facts in the record connect Adams with the motel room. Clarke simply stopped two men who he saw leaving the vicinity of a nightclub, more than seven blocks from the motel, on a hunch that one could have been "Mousey." "[A]n individual's reasonable expectation of privacy [can]not [be] subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown v. Texas*, 443 U.S. 47, 51 (1979).

The Commonwealth's assertion that the informant's tip supplied the basis for a valid stop and search is untenable. The informer's tip, ostensibly uncertain at its inception, was discredited by Clarke's observations and the results of his search of the motel room. Moreover, no proof was adduced that the persons who last occupied the motel room were the same persons who occupied the room during the thirty-six hour span when the informer said he saw "Mousey" distribute cocaine in the room. The record fails to establish that the manager saw anyone leaving the motel who met Mousey's description. In summary, the record reflects that Clarke neither found evidence to support the informer's tip nor had a reasonable basis to conclude that Adams had been in the motel room.

The search of the motel was conducted upon the "reliable" informer's description of *past* activity and "easily obtained facts and conditions existing at the time of the tip," *Illinois v. Gates*, 462 U.S. 213, 245 (1983), but the tip proved to be useless. At the time Clarke stopped Adams, he knew nothing more than what was included in the search warrant. Even if the information in the warrant concerning the motel could be deemed reliable, once the search was undertaken and proved to be of no avail, Clarke had no basis to stop Adams. Clarke possessed no additional information to elevate his hunch that Adams was "Mousey" into the realm of reasonable suspicion. There was no particular fact that Clarke could articulate that would reasonably lead him to suspect Adams of any crime as Adams stood preparing to make a telephone call. Clarke's independent observations supplied no further indicia of criminal behavior. Under these circumstances, there was no justification for a violation of Adams' right to be free from unwarranted police intrusions.

Having entered the place authorized by the warrant and having found nothing to support the claims of the informant, Clarke could no longer rely on the informant's assertions to justify the seizure. Twenty minutes after Clarke left the motel, a quarter of a mile distant from the motel, and possibly thirty-six hours after the informant allegedly witnessed a narcotics sale, Clarke stopped Adams on the street solely because he believed that Adams fit the general description of the man who he expected to find in the motel. He then searched Adams upon an informant's unverified supposition that the man known as "Mousey may be armed." Clarke's conduct does not satisfy the reasonableness standard of the Fourth Amendment.

For these reasons, the decision of the trial court to deny the motion to suppress the evidence is reversed.

*Reversed.*

Barrow, J., and Coleman, J., concurred.