## CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

    v.

Julius Christopher Claytor

October 15, 1991

Case No. CR91-1032

By JUDGE CLIFFORD R. WECKSTEIN

Police officers who searched the defendant, Julius C. Claytor, on April 9, 1991, found crack cocaine and marijuana in his possession. After he was arrested and advised of certain constitutional rights, he made a taped statement admitting that the drugs were not for his personal use but for distribution to another person.

After his case reached the Circuit Court, Claytor moved to suppress evidence resulting from the search on April 9, 1991. Evidence on this motion was presented at a hearing held on August 14, 1991. At the conclusion of the evidence and arguments of counsel, I ruled from the bench, denying the motion to suppress.

Thereafter, Claytor entered a guilty plea before another judge, a presentence report was ordered, and the matter was set down for sentencing. However, before the date set for the sentencing hearing, Claytor's lawyer became aware of an opinion of the Court of Appeals of Virginia, announced one week before the suppression hearing had been held (but which had not yet been disseminated generally on the date of the suppression hearing) which, Claytor's lawyer argues, should affect the trial judge's decision on the motion to suppress. Therefore, the judge who accepted Claytor's guilty plea granted him leave to withdraw the plea. He did so, the case was transferred

back to my docket, a new suppression motion was filed on October 1, 1991, and a hearing was held on October 8, 1991, at which Claytor's lawyer and the attorney for the Commonwealth again argued the law, as applied to the facts adduced on August 14, 1991. At the conclusion of this hearing, I took the new motion to suppress under advisement.

Counsel for Claytor, in arguing the motion, made clear that her focus is on whether or not the police officers who came into contact with the defendant had a lawful basis to seek permission to search him. In ruling on the motion, then, I focus on the same question and make the following findings of fact and conclusions of law.

### Findings of Fact

At approximately 11:19 p.m. on April 19, 1991, Roanoke City Detectives M. A. Lee and S. T. Oliver observed three men standing on a sidewalk on the north side of Melrose Avenue, just west of 18th Street, in the City of Roanoke. This is an area in which Detective Lee and other police officers have made drug purchases and in which illicit drugs usually are sold on the street to customers who approach in cars and on foot. It is "a known open air drug area."

As the detectives pulled their car into a lot near these men, both officers remarked upon an action taken by one of the men, the defendant, Julius Claytor.

Mr. Claytor turned away from the observing officers and "stuck his hand down the front of his pants." "[H]is arm went all the way down in, almost above his wrist." He then "pulled it back out and turned back around in the direction facing [the officers]."

When the officers pulled onto the lot, they were recognized by one of Claytor's companions as police officers. I draw the reasonable inference that Claytor, too, recognized that Lee and Oliver were police officers.

The detectives approached the defendant. Lee identified himself, displayed his badge, and explained that, based upon his observations, he "felt that [the defendant] had attempted to conceal something in his pants."

The detective's phraseology was the verbalization of the expression of logical conclusion -- and sensory

perception -- which rationally flowed from the observations made by trained police officers at the time and place and under the circumstances that these observations were made. Both officers found the defendant's unusual actions worthy of remark.

Lee asked Claytor whether he had any drugs or weapons. When he responded in the negative, Lee sought, and was granted, Claytor's permission to search his person for drugs.

The defendant was wearing jeans above a pair of sweatpants. When the detective checked the pockets of the jeans and found nothing, he told the defendant that he would like to check his sweatpants. Claytor reached down, pulled the sweatpants and the top waist band of his underwear down, and Lee saw a plastic bag which contained marijuana. Because Lee previously had seen the defendant thrust his arm further into his pants, the detective pulled back the defendant's underwear, looked into the groin area, and saw another plastic bag containing four chunks of crack cocaine.

### Conclusions

In this case, I will assume that a "stop" or "detention" had occurred, *i.e.*, "that 'a reasonable person would have believed he was not free to leave'." *Goodwin v. Commonwealth*, 11 Va. App. 363, 365, 398 S.E.2d 690 (1990) (quoting and citing other cases). Proceeding on that assumption, taking cognizance of the totality of the circumstances, and assessing the whole picture, I now find that the detaining officers had a particularized and objective basis for suspecting Claytor of criminal activity.

According to the testimony adduced at the hearing, two trained and experienced police officers found remarkable the fact that when the officers' car pulled into the parking lot, the defendant turned, thrust his hand deeply into his sweatpants, removed his hand, and turned back toward the officers.

The officers' belief that the defendant was concealing contraband or a weapon was not an unarticulated hunch, it was a reasonable -- indeed, it was *the* reasonable -- and natural conclusion to draw from the officers' observations.

Any observer who had been present at that time and place, with knowledge of the character and history of the area (whether or not a trained police officer), would have perceived and articulated the fact that the defendant's conduct unmistakably indicated an intention to conceal something from the observation of the police officers. A reasonable and objective observer at that time and place and under those circumstances would have concluded that that which the defendant intended to conceal must necessarily be something that would cause him problems, were the police to observe it, *i.e.,* contraband or a weapon. *See, Leeth v. Commonwealth,* 223 Va. 335, 339-40, 288 S.E.2d 475 (1982); *K. R. Smith v. Commonwealth,* --- Va. App. ---, 407 S.E.2d 49 (No. 0459-90-2, August 6, 1991); *Goodwin v. Commonwealth, supra; Moss v. Commonwealth,* 7 Va. App. 305, 307, 373 S.E.2d 170 (1988); *Iglesias v. Commonwealth,* 7 Va. App. 93, 372 S.E.2d 170 (1988) (*en banc*).

This is not to say that the defendant should not have renewed his motion to suppress. Clearly, *K. R. Smith v. Commonwealth,* another case in which a police officer saw a man stick his hand into his sweatpants, and a case in which the Court of Appeals ruled that evidence should have been suppressed, is a case that must be considered in support of the defendant's position.

However, I sit as trier of fact weighing the evidence on Claytor's motion. Whatever might have been the weight or effect of the evidence presented in *K. R. Smith,* "this Court," to paraphrase Justice Harrison in *Johnson v. Commonwealth,* 221 Va. 736, 741, 273 S.E.2d 784, *cert. denied* 454 U.S. 920 (1981), "would stultify itself to hold" that the officers' detention of Claytor was based on no more than unarticulable guess or hunch.

Rather, and I believe beyond cavil, it was based upon the objectively reasonable conclusion that the defendant, spying the police officers, had something to hide from them that they had reason and right to see, either for their own protection or in pursuit of their duty. Considering the totality of the circumstances, such a conclusion is, objectively, the only reasonable conclusion that this Court can reach.

For the foregoing reasons, then, the defendant's motion to suppress is denied.