## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Roy Lee Perry

June 17, 1992

Case No. F92–1878

BY JUDGE ROBERT L. HARRIS, SR.

In this case, the Court must decide whether evidence obtained in the search of a vehicle in which the defendant was a passenger should be suppressed. The search was conducted with the verbal consent of the vehicle's occupants after police officers had stopped the car in a 7-Eleven parking lot. If that search, despite the apparent consent, violated the defendant's Fourth Amendment protection against illegal searches, then "it is well settled" that the evidence obtained must be excluded. *Walls v. Commonwealth*, 2 Va. App. 639, 652, 347 S.E.2d 175, 183 (1986).

According to the testimony of one of the officers, the defendant was observed putting his nose inside a plastic baggy and then looking at the driver of the vehicle in which he was a passenger and smiling. Suspicions aroused, the officer then proceeded to follow the car to the 7-Eleven parking lot.

> We followed him around until we could get a unit to finally get up to him . . . . [H]e pulled up into the . . . 7-Eleven lot, 1100 West Main. We pulled up behind him . . . . I walked to the driver's side. I I.D. [sic] myself as a police officer. I asked both of them, both the driver and Mr. Perry, to step out of the vehicle.

Trans. at pp. 12–13.

The United States Supreme Court has found that not every encounter between police and citizens constitutes a "seizure" which implicates the Fourth Amendment's prohibition against illegal seizures. *See e.g., Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen . . . ."). The Court has generally adopted a "reasonable person" test in order to characterize police-citizen encounters. "Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed that he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984).

The testimony of the officer indicates that the encounter with Mr. Perry was more than just consensual interaction. Indeed, the officer characterizes the encounter as a "stop." Even had the officer not so testified, the combined acts of pulling up behind the vehicle, asking the occupants to step out, and then detaining them at least long enough to "run the vehicle['s]" license number, *see id.* at 13, would make it so. *See Florida v. Royer*, 460 U.S. at 498 (Court notes that in order for there to be no Fourth Amendment implications in a police encounter with a citizen, the citizen "may not be detained *even momentarily* without reasonable, objective grounds for doing so.") (Emphasis added.) Under such circumstances, it would be clear to most reasonable people that their freedom to leave was in significant doubt. Accordingly, this Court concludes that the encounter between the defendant and the police officer was a "seizure" of his person and that Fourth Amendment concerns must be addressed.

In *Baldwin v. Commonwealth*, 243 Va. 191, 413 S.E.2d 645 (1992), the Virginia Supreme Court notes that the United States Supreme Court has found two types of "seizures" which implicate the Fourth Amendment, an arrest and an investigatory stop. *Baldwin*, 413 S.E.2d at 647. It is the latter with which we are concerned here.

> "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." In order to justify

such a seizure, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

*Id.* at 647 (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)).

In *Goodwin v. Commonwealth*, 11 Va. App. 363, 398 S.E.2d 690 (1990), police officers thought they saw the defendant "jam" something down into his coat pocket when he spotted their car. They subsequently approached him and told him they wished to search him for weapons, a search to which he consented. *Id.* at 365, 398 S.E.2d at 691. The Court of Appeals found that the police officers' observations were, without other indicia of suspicious behavior, insufficient basis for even a *Terry*-type stop. *Id.* at 367, 398 S.E.2d at 692. The act of the defendant observed by the police officer in the case at bar is even more facially benign than that at issue in *Goodwin* and therefore provides no greater justification for an investigatory stop.

Similarly, in *Moss v. Commonwealth*, 7 Va. App. 305 (1988), the police justified their stop of the defendant solely upon an officer's observation that the suspect had extended his arms and made a "twisting motion with something between his fingers." *Moss*, 7 Va. App. at 306. This observation too, standing alone, was found insufficient to justify the stop. *Id.* at 308; *see also, Commonwealth v. Hargrove*, 20 Va. Cir. 261, 263 (1990) (observations by police of a suspect leaving a group of young men in a known area of drug activity, and after glancing up and down the street, walking over to a stopped car and placing his hand inside the vehicle for several seconds before hurrying back to the group, was insufficient justification for a *Terry*-type stop).

Because the observations offered by the officer in the case at bar are no more indicative of criminal behavior than those observed by officers in either *Moss*, *Goodwin*, or *Hargrove*, this Court finds that there was insufficient basis to validate an investigatory stop and that therefore this "seizure" was invalid under the Fourth Amendment.

The Court is aware that the critical question before it, whether the cocaine found in the officer's search must be suppressed, is not entirely answered by a finding that the initial police stop was illegal. If the Commonwealth can show that a consensual search occurs after an illegal stop and that consent is not the product of that illegal stop, then evidence obtained in that search is legally obtained, as would be

any evidence discovered where consent is given for a search. *Cf., Iglesias v. Commonwealth*, 7 Va. App. 93, 113, 372 S.E.2d 170, 181 (1988) (Keenan, J., concurring) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), Justice Keenan notes, "While the scope of the search conducted here exceeded the legitimate basis for the stop, I believe that Iglesias' consent operated to validate the search of the automobile."); *Walls v. Commonwealth*, 2 Va. App. at 652, 347 S.E.2d at 182–83. (Where consent for a search was not obtained until after an illegal entry, the court finds that "the consent itself was a fruit of the poisonous tree unless the Commonwealth can show that it was obtained through an independent act of free will, rather than by means of the illegal entry.")

The burden on the Commonwealth, however, where it attempts to cleanse apparent consent of the taint of an illegal seizure is great. In *Florida v. Royer*, 460 U.S. 491, a traveler identified by detectives as fitting a "drug courier profile" was approached by those detectives and asked if he could speak with them for a moment. Upon request, the suspect produced his airline ticket and driver's license which revealed that he was travelling under a name other than his own. *Id.* at 493–94. That information, the Court found, was sufficient to justify a continued *Terry*-type investigatory stop and that, if consent had been given at that point for a search of luggage, that consent would have carried no taint and evidence found would have been admissible. *See id.* at 502. However, by the time consent was given, the suspect's ticket remained in the possession of the detectives, and he had been escorted to a small room for further questioning. *Id.* at 494–95. This, the Court found, moved the "seizure" beyond the *Terry*-type investigatory level to a level which required probable cause to arrest; a requirement that the Court found lacking. *Id.* at 496. Because consent for a search was not given until after the "seizure" had reached an illegal level, that consent was irreversibly tainted by the illegality. *Id.* at 501.

Although the seizure in the case before this Court does not reach the level of that in *Royer*, because the police officers effected an investigatory stop without sufficient reason to suspect criminal activity, the detention involved here is no less invalid. As an inseparable part of that illegal seizure, the officers requested permission to search the vehicle and its occupants. Under such circumstances, it would be disingenuous to suggest that consent was an "independent

act of free will." *See, Walls v. Commonwealth*, 2 Va. App. at 652, 347 S.E.2d at 182–83. The request for the search was so bound up in the context of the stop that it was, at the very least, the fruit of the poisonous tree, if not an integral part of the tree itself. This is little different from the situation in *Goodwin* in which officers had approached the defendant on the street and requested that they be allowed to search him for weapons. *Goodwin*, 11 Va. App. at 365, 398 S.E.2d at 691. Although he consented to the search, that search was treated, at least implicitly by the Court of Appeals, as part and parcel of the stop. *See id.* at 366, 398 S.E.2d at 691–92.

Because the Court has found that the encounter between the officers and this defendant constituted an investigatory stop which implicates Fourth Amendment concerns, that the stop was without sufficient articulable basis to be valid under the Fourth Amendment, and that the subsequent consent for the search was the product of that illegal stop, any evidence discovered during that search is inadmissible in the trial of this defendant.