212

## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

   v.

Douglas Fullard

February 4, 1994

Case No. (Criminal) 81786

BY JUDGE GERALD BRUCE LEE

This matter is before the Court upon Defendant Douglas Fullard's Motion to Suppress evidence. The Court grants Mr. Fullard's Motion to Suppress for the reasons below.

The Court after hearing the testimony of the witnesses makes the following findings of fact and draws the following conclusions of law.

Officer Edward O'Carroll, a uniformed Fairfax County Police Officer, observed an unoccupied car parked at the Quickmart on Gunston Cove Road near Lorton Road. Officer O'Carroll had no reason to check this particular car. Officer O'Carroll routinely checks cars in parking lots looking for stolen cars and drivers with outstanding warrants.[1]

Officer O'Carroll entered the license tag number of Mr. Fullard's car into his Mobile Data Terminal (MDT), a computer monitor and keyboard in his patrol car. The MDT communicates with the Virginia Department of Motor Vehicles ("DMV") and provides a police officer

---

[1] The officer's practice of "routine checks" of license tag and owner status using his police cruiser computer as a basis to stop cars was not placed in issue in the defendant's motion to suppress. Whether this practice has any Fourth Amendment implications is beyond the scope of the motion and this opinion. *See Delaware v. Prouse*, 440 U.S. 648, 661–62, 59 L. Ed. 2d 660 (1979); *Stroud v. Commonwealth*, 6 Va. App. 633, 370 S.E.2d 721 (1988).

with information about license tags, operator licenses, and outstanding criminal warrants. DMV reported that (1) the license was not stolen; (2) Douglas Fullard owned the car; (3) Douglas Fullard was suspended after having been declared a habitual offender; (4) Douglas Fullard was a six foot five inch male, 234 pounds, with black hair and brown eyes; and (5) there was an outstanding criminal warrant for Douglas Fullard for assault and battery.

Officer O'Carroll performed the records checks on the car while driving on Lorton Road. When he received information about Mr. Fullard's outstanding criminal warrant, Officer O'Carroll turned around and headed towards the Quickmart. As Officer O'Carroll drove down Lorton Road, he saw Mr. Fullard's car, twenty five feet away, turning right to enter Route 395 South. Officer O'Carroll observed that the driver of the car was an African-American male he suspected was Douglas Fullard. Officer O'Carroll followed the car for about two miles on Route 395 before activating his emergency lights and stopping the car. The car was not violating the law before it was stopped.

Officer O'Carroll approached the car and requested the driver's license and registration. Mr. Fullard produced his registration and could not produce a driver's license. Mr. Fullard said his driver's license was suspended. Officer O'Carroll left Mr. Fullard in his car and he walked back to his police cruiser. Officer O'Carroll called for back-up. Officer O'Carroll returned to the car and asked Mr. Fullard if he was a habitual offender. Thereafter, Officer O'Carroll arrested Mr. Fullard for driving after having been declared a habitual offender. Va. Code Ann., § 46.2–351 (1992 & 1993 Cum. Supp.).

Mr. Fullard challenges the constitutionality of the stop of his car and alleges that Officer O'Carroll did not have reasonable articulable suspicion to seize his vehicle. *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660 (1979); *Waugh v. Commonwealth*, 12 Va. App. 620, 405 S.E.2d 429 (1991). Defendant challenges the credibility of Officer O'Carroll's assertion that he could discern from observing a moving car twenty-five feet away, the height, weight, hair color and eye color of a suspect, particularly when the description did not specify the race of the licensee. In sum, Defendant argues that the description of the suspect is so broad that *any* male driving this particular car would be subject to seizure by the police.

The Commonwealth argues that Officer O'Carroll "had an articulable and reasonable suspicion that justified such a stop." *Stroud v.*

*Commonwealth*, 6 Va. App. 633, 636, 370 S.E.2d 721, 723 (1988). The Commonwealth also asserts that Officer O'Carroll's observance of a driver in a car registered by a habitual offender, combined with an outstanding warrant, rises to the level of reasonable articulable suspicion.

The Fourth Amendment requires the Court to determine, based upon the totality of the circumstances, whether the officer possesses an articulable reasonable suspicion that a motorist is [unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise] subject to seizure for violation of law. *Bulatko v. Commonwealth*, 16 Va. App. 135 (1993); *Waugh v. Commonwealth*, 12 Va. App. 620, 621–22, 405 S.E.2d 429, 429 (1991) (quoting *Delaware v. Prouse, supra*).

Assessing the whole picture, the detaining officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. *Goodwin v. Commonwealth*, 11 Va. App. 363, 366, 398 S.E.2d 690, 692 (1990); *Leeth v. Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982). The Court must consider objective standards rather than the police officer's subjective intent. *Iglesias v. Commonwealth*, 7 Va. App. 93, 100, 372 S.E.2d 170, 174 (1988) (*en banc*). Here, the officer assessed the height, weight, hair color, and eye color of a *seated* driver, passing 25 feet away, in the opposite direction, in a moving car. The car was not violating any traffic law. The Court questions the reasonableness of a stop predicated on this general description, which subjects *any male driver* operating this car to a stop whether they commit any traffic violation or not.

The mere fact that a car is registered to a habitual offender is no indication of criminal activity. A habitual offender may register a car in Virginia upon a showing of proof of financial ability. Va. Code Ann., §§ 46.2–391 and 46.2–472 (1992 & 1993 Cum. Supp.). Therefore, a law enforcement officer may not stop a car registered to a habitual offender without some particularized suspicion that the driver is violating the law or subject to seizure for other violation. *Delaware v. Prouse, supra*, at 663. To rule otherwise then, whenever a person drives a car registered to a habitual offender, they may be stopped whether or not the officer has any reason to believe the driver has violated any law. The Fourth Amendment reasonable articulable suspicion standard at a minimum requires some particularized suspicion directed at a particular individual and a crime. *Iglesias v. Common-*

*wealth, supra,* at 100. The Court finds that the officer's information under these circumstances is not a particularized and objective basis for subjecting this driver to a stop of a car consistent with Fourth Amendment principles.[2] Therefore, the motion to suppress evidence is granted.

---

[2] The level of suspicion required for an investigative stop is less demanding than the standard of probable cause. *See Bulatko v. Commonwealth, supra; Stroud v. Commonwealth, supra,* at 636. However, the information must point to a particular person and in this case, the description is so broad, any male operating this car at anytime would be subject to an investigatory stop. The Fourth Amendment does not allow for random stops on such a broad basis without particular reason to seize a citizen. *Leeth v. Commonwealth, supra,* at 340.