COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Elder
Argued at Richmond, Virginia


DANNY LAVON GAYLES
                                    MEMORANDUM OPINION[*] BY
v.  Record No. 1382-95-2          JUDGE JAMES W. BENTON, JR.
                                       AUGUST 13, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                   L. A. Harris, Jr., Judge

        Steven D. Benjamin (Betty Layne DesPortes,
        Steven D. Benjamin and Associates, on
        briefs), for appellant.

        Marla Graff Decker, Assistant Attorney
            General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.


     Danny Lavon Gayles appeals his conviction for possession of

cocaine.  Code § 18.2-250.  He contends the trial judge erred in

admitting evidence obtained in violation of the Fourth Amendment.

 We agree and reverse his conviction.

     Viewed in the light most favorable to the Commonwealth, the

party prevailing below, Richmond v. Commonwealth, 22 Va. App.

257, 260, 468 S.E.2d 708, 709 (1996), the evidence proved that on

January 9, 1995, at 2:00 a.m., two Henrico County police officers

responded in a marked vehicle to a report of three "suspicious

subjects" at the Henrico Arms Apartment Complex.  One of the

officers testified that when they arrived at the complex, he saw

three males standing on a sidewalk at a corner in front of an

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

apartment building. The officer testified that the apartments are "posted a no-trespassing zone." When the officer stopped his vehicle and approached the men, two walked in one direction on the sidewalk and the other one walked in the opposite direction on the sidewalk. The officer asked the two men together, "Hey, how are you doing?" Both men continued to walk until the officer asked twice if he could talk to them for a minute. The officer's written report states that twice he asked Gayles "to stop."

When he asked the men if they lived in the apartment complex, Gayles replied "No." Gayles complied with the officer's request for identification and gave him his driver's permit. The officer then asked "what was he doing in the apartment complex." Gayles said that he was "looking for an address." Gayles could not provide the specific address he was seeking but "kept pointing in a direction" and saying, "I know it's a building over there."

The officer asked Gayles if he was armed. Gayles responded, "No" and opened his coat to display his waist area. The officer then told Gayles, "I'm going to pat you down" and began to frisk Gayles. The officer testified that he "scrunched up the inside pockets and the outside pockets of [Gayles'] jacket" and then "patted" the front pockets of Gayles' pants. When he patted Gayles' rear pockets, he felt "a lump of something." Gayles pulled away. As the officer attempted to grab and hold him, Gayles ran away. The officer chased him through a parking lot in

the apartment complex.  During the chase, the officer observed Gayles throw a cellophane bag from his pocket.  Gayles ran to the end of the apartments and stopped.

After the officer reached him, Gayles told the officer that he did not wish to be caught with a pocketknife.  Although the officer found nothing in Gayles' left rear pocket, he searched along the route of the pursuit and found a bag of rock cocaine. The officer also found in another location along the route of pursuit a plastic bag containing smaller bags.  After arresting Gayles, the officer searched him and found a razor blade and $118.  Gayles denied any knowledge of the cocaine.

The trial judge ruled that the pat-down was "certainly reasonable under all these circumstances."  Thus, the trial judge overruled the motion to suppress the cocaine and convicted Gayles of possession of cocaine.

Agreeing that the officer initiated a consensual encounter, see Buck v. Commonwealth, 20 Va. App. 298, 301-02, 456 S.E.2d 534, 535 (1995), Gayles contends that the officer violated his fourth amendment rights by frisking him.  The Commonwealth does not claim the frisk was a consensual search.  Indeed, the facts prove that although Gayles lifted up his coat to display his clothing, he never granted the officer permission to conduct a pat-down for weapons.  The Commonwealth argues, however, that the officer's concern for his own safety justified the pat-down.

An officer may conduct a Terry stop only when the officer

has a reasonable, articulable suspicion that an individual is engaged in criminal activity.  Hayes v. Florida, 470 U.S. 811, 816 (1985).  Furthermore, to subject the individual to a frisk for weapons, the officer must "'reasonably suspect[] that the person is dangerous' or 'intends to do him bodily harm.'"  Payne v. Commonwealth, 14 Va. App. 86, 89, 414 S.E.2d 869, 870 (1992) (citation omitted).  However, the officer may not act upon an "inchoate and unparticularized suspicion or 'hunch.'"  Moss v. Commonwealth, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)).

The officer testified that the apartments were located in a high crime area and that police officers had been assaulted within the complex.  Proof that the police encountered or detained the accused in a known high crime area is not sufficient to justify a fourth amendment seizure.  Texas v. Brown, 443 U.S. 47, 52 (1979); Smith v. Commonwealth, 12 Va. App. 1100, 1104, 407 S.E.2d 49, 52 (1991).  "'Even in high crime areas, where the possibility that any given individual is armed is significant, Terry requires reasonable, individualized suspicion [that a suspect is armed] before a frisk for weapons can be conducted.'"  Stanley v. Commonwealth, 16 Va. App. 873, 875, 433 S.E.2d 512, 514 (1993)(quoting Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990)).

While the Commonwealth proved that the time and place of the encounter may have increased the officer's suspicions, the

- 4 -

evidence never proved why Gayles, in particular, posed a danger to the officer's safety. Although the Commonwealth's evidence proved that Gayles was unable to name a specific address, Gayles did point to an apartment. This evidence did not suggest that Gayles' conduct presented a threat to the officer's safety. No rule of law authorizes officers to conduct general frisks for weapons solely because the officer decides to initiate an encounter. Id. We will not assume on these facts that Gayles was dangerous simply because an unidentified caller reported three suspicious males standing in front of the complex.

Although the officer testified that Gayles initially attempted to avoid speaking with him, we place little significance on this behavior. Gayles had no duty to speak with the officer, and his decision to avoid contact with him raises only a slight, if any, suggestion of suspicious circumstances. See Florida v. Royer, 460 U.S. 491, 497-98 (1983). Viewing the circumstances objectively, the evidence was insufficient to prove a reasonable articulable suspicion that Gayles was armed and dangerous. Generalized suspicion will not support a frisk search. Sattler v. Commonwealth, 20 Va. App. 366, 369, 457 S.E.2d 398, 400 (1995).

This case is similar to Smith, where we refused to uphold an investigatory stop and frisk when an officer observed an individual on a playground at night suddenly stick something in his pants. 12 Va. App. at 1104, 407 S.E.2d at 52. Also, in

_Goodwin v. Commonwealth_, 11 Va. App. 363, 398 S.E.2d 690 (1990), the Commonwealth proved that police officers observed the accused emerge from an open space behind an apartment in an area known for crime and that he jammed his hands in his coat upon seeing the policemen.  11 Va. App. at 364-65, 398 S.E.2d at 691.  We held that those observations were insufficient to believe Goodwin posed a threat to the officers.  _Id._ at 367, 398 S.E.2d at 692.  See also _Moss_, 7 Va. App. at 308, 373 S.E.2d at 172.

In this case, Gayles did not make any suspicious movements or gestures and even displayed his waist area to the officer.  That conduct was not threatening.  As this Court stated in _Toliver v. Commonwealth_, ___ Va. App. ___, ___ S.E.2d ___ (1996):

> The circumstances were insufficient to give [the] officer . . . an objectively reasonable basis for suspecting that [the accused] was armed and dangerous.  He had no information that [the accused] was involved in criminal activity, nor had he observed any criminal behavior.  The mere fact that [the accused] was in an area know for drugs was insufficient to support an inference that he was involved in criminal activity.  [The accused] talked to [the] officer . . . willingly and gave his correct name when asked.  Nothing suggested that he was carrying a concealed weapon.  Therefore, the frisk was illegal.

_Id._ at ___, ___ S.E.2d at ___.  Thus, we find the trial judge was plainly wrong in ruling that the officer lawfully frisked Gayles.

This Court has held that "contraband abandoned during flight is not admissible if it is the product of a prior illegal seizure."  _Smith_, 12 Va. App. at 1104, 407 S.E.2d at 52.  In

- 6 -

Smith, the officer conducted an unlawful frisk of the accused who struggled with the officer and then fled. After capturing the accused, the officer found a bag of crack cocaine along the escape route. "The cocaine . . . , although abandoned by the [accused] during flight, was first discovered by the police officer during his attempt to search the [accused] during an investigatory stop." Id.

For these reasons, we hold the trial judge erred in refusing to suppress the evidence and, therefore, reverse the conviction.

Reversed.