## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Lamont Brown

October 22, 1996

Case Nos. F96-2142, F96-2143, F96-2144, F96-2145

BY JUDGE DONALD W. LEMONS

The matter before the court is the defendant's Motion to Suppress evidence obtained from him on January 19, 1996. Officer Erick Flick testified that he and three other officers were assigned to a drug enforcement team in the 3900 block of Chamberlayne Avenue in the City of Richmond. The officers arrived at the location and observed two men on the side of the street. Officer Flick saw one man jump on the back of the defendant and appear to place his hand inside the defendant's coat. He admits that he saw nothing potentially criminal about this behavior. Officer Flick and the other three officers were in uniform and as they got out of their unmarked police car, they began walking toward the defendant. At this time the defendant began putting his hand "in and out of his right coat pocket." The officer noticed what appeared to be a sagging or bulging of the right coat pocket that made him concerned that the defendant might have a weapon. The officer testified that he had found weapons in other similar circumstances. As the defendant was placing his hand in and out of his right coat pocket, he began "side-stepping" away from the officers in a manner which the officer concluded was suspicious.

Officer Flick testified that the 3900 block of Chamberlayne Avenue is a high drug traffic area. He knows this because of personal experience arresting people in that block, complaints from the public, and the testimony of other police officers.

The officer conducted a "pat down" of the defendant without his consent. No reasonable person would feel free to walk away; consequently, for Fourth Amendment purposes, Brown was "seized" by Officer Flick. In

order to justify such a seizure an officer must have a reasonable and articulable suspicion of criminal activity on the part of the defendant. See *Hatcher* v. *Commonwealth,* 14 Va. App. 487 (1992); *Toliver* v. *Commonwealth,* 23 Va. App. 34 (1996). The issue in this case is whether the officer had a reasonable articulable suspicion that an offense had occurred and that the defendant was armed and dangerous. There is nothing in the evidence to support the conclusion that an offense had occurred until the officer saw the sagging bulge in the defendants pocket accompanied by the defendant's suspicious conduct. At the suppression hearing, the weapon that was confiscated from the defendant was placed in the right hand pocket of the jacket the officer identified as being the one worn by the defendant or similar to it. The Court could see the distortion in the pocket caused by the weapon as the weight of the object stretched the coat causing it to sag. The officer testified that he saw this distortion at the scene of the offense.

In the case of *Goodwin* v. *Commonwealth,* 11 Va. App. 363 (1990), the Court of Appeals of Virginia reversed a conviction where the only evidence justifying the stop of Goodwin was that "no one else was in the area and Goodwin shoved his hand in his coat pocket, apparently upon seeing the approaching patrol car." *Id..* at 367. Goodwin made no attempt to flee and engaged in no other suspicious acts. The court noted that:

> [T]he police officers, relying on their experience and instincts, saw a suspect doing something with his hands. Based primarily on that action, which they considered suspicious, they stopped the suspect. While the police are regularly required to rely on their experience and instincts, the Fourth Amendment requires, at a minimum, that they possess articulable facts giving rise to reasonable suspicion of criminal activity before depriving a citizen of his or her privacy or freedom of movement. In our judgment, on these facts, the officers did not meet that burden. This court recognizes that officers Vickers and Kelly were patrolling in a high crime area and that Goodwin was wearing a bulky coat. *Had there been any other objective basis for suspecting misconduct by Goodwin, the police might have been justified in stopping him.*

*Id.* (emphasis added).

The additional "objective basis for suspecting misconduct" is present in this case. The defendant was not stopped because he was suspected of

drug possession or trafficking. He was stopped because the officer suspected that he possessed a concealed weapon. The Supreme Court of Virginia observed in *Simmons* v. *Commonwealth*, 217 Va. 552, 556 (1977), "[i]n light of the information obtained by [the officer] from the informant, his experience as an officer in the Rosslyn area, and his observance of the defendant's warm-up jacket sagging in the front, the officer had reasonable cause to believe that the defendant might be carrying a concealed weapon and the search was warranted to protect himself and others who might be in danger."

The Court of Appeals has repeatedly stated that, "[w]hether the circumstances justify the inference that the suspect may be armed and dangerous depends upon the characteristics of the area where the stop occurs, the time of the stop . . . as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence." *Nesbit* v. *Commonwealth*, 15 Va. App. 391, 393 (1992) citing *Williams* v. *Commonwealth*, 4 Va. App. 53, 67 (1987). Here the stop was at night in a high crime area known for drug trafficking. The defendant's movements upon being discovered by the officers were extremely suspicious including "side stepping" in an effort to back away from the officers while simultaneously placing his hand "in and out of his right coat pocket" precisely where the officer was concerned that a concealed weapon was placed. It was not unreasonable for the officer to be concerned about flight because the defendant was backing away from them. Additionally, it was not unreasonable for the officer to be concerned about his safety given the frequent movements of the defendant's hands in and out of his coat pocket, the sagging bulge in the pocket, and the nervous and suspicious behavior they observed.

The stop of the defendant under the circumstances presented in this case recalls the words of the United States Supreme Court where it said:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams* v. *Williams*, 407 U.S. 143, 145-46 (1972) (citations omitted).

Here the officer stopped the defendant because of his reasonable articulable suspicion that the defendant was in possession of a concealed weapon. It is the same set of circumstances that justifies the pat down for the weapon the defendant was thought to possess. The information learned from the pat down provided probable cause that the defendant possessed the weapon and justified the search of the defendant's pocket which revealed the weapon in question. The defendant was arrested and in a search incident to arrest the officers discovered cocaine.

The defendant argues that the recent case of *Toliver* v. *Commonwealth*, *supra*, requires the court to sustain his Motion to Suppress. But in *Toliver* the court noted that the officer had "no information that Toliver was involved in criminal activity, nor had he observed any criminal behavior." *Toliver*, 23 Va. App. at 37. Without any basis to do so, the officer patted down the defendant. The facts of this case are demonstrably different.

It is not necessary for the court to determine if any one of the facts presented would be sufficient to justify the officer's stop of the defendant in this case. Unlike the facts in *Goodwin*, the officers in this case had the additional objective basis to support the stop that was lacking in *Goodwin*. This court finds that, under the totality of the circumstances, the officer was justified in stopping the defendant and patting him down for weapons. Then Chief Justice I'Anson speaking for a unanimous Court in *Simmons*, *supra*, succinctly stated the practical ramifications of holding otherwise:

> A police officer should not be required to ask of a person whom he reasonably suspects is engaging in criminal activity or is about to commit a serious crime to explain his conduct and run the risk of receiving a bullet in answer to his questions.

*Simmons*, 217 Va. at 556.

The defendant's Motion to Suppress is denied.