COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


DYWARD JEAN GREGORY

v.          Record No. 2083-94-2          OPINION BY
                                     JUDGE SAM W. COLEMAN III
COMMONWEALTH OF VIRGINIA                MARCH 19, 1996


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                   Jose R. Davila, Jr., Judge

          Cullen D. Seltzer, Assistant Public Defender
          (David J. Johnson, Public Defender, on
          briefs), for appellant.

          Eugene Murphy, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Dyward J. Gregory was convicted in a bench trial of

possession of cocaine with intent to distribute, a second or

subsequent offense, in violation of Code § 18.2-248(C).  Gregory

 contends that the trial court erred by denying his motion to

suppress the evidence seized from him and that the evidence is

insufficient to prove he intended to distribute cocaine.  We hold

that the trial court did not err and affirm the defendant's

conviction.

     At approximately 1:56 a.m. on April 9, 1994, Officer Ronald

McClaren, Jr. received a radio dispatch that an anonymous caller

reported that an individual "was standing out in the roadway [at

the 1700 block of Carlyle Avenue in Richmond] flagging motorists

down to ask them if they wanted to buy drugs."  The caller

described the individual as a black male wearing a green sweat

jacket with a green hooded jacket underneath, a pair of dark jeans, and tennis shoes.  The caller also provided information about the color, make, and "other identifying characteristics" of the automobile from which "the individual was supposedly dealing in drugs."

About two minutes after receiving the dispatch, Officer McClaren approached the 1700 block of Carlyle Avenue.  He observed the defendant in a vehicle matching the description given by the anonymous tipster.  The defendant was dressed in the manner described by the caller.

As McClaren approached the defendant's vehicle, the defendant looked in McClaren's direction and began to walk away from the vehicle.  He proceeded down Carlyle Avenue and looked over his shoulder toward McClaren as he walked.  Officer McClaren drove his patrol car beside the defendant and stopped.  Because McClaren could not see one of the defendant's hands, McClaren told the defendant to show the other hand.  The defendant did not show both hands until McClaren exited his patrol car and drew his weapon.  After the defendant showed both hands, McClaren reholstered his weapon.

McClaren explained to the defendant that he was responding to a call that an individual was seen selling drugs and that he was going to check to determine whether the defendant had outstanding arrest warrants.  McClaren informed the defendant that he would be free to go if there were no problems.  The

defendant replied, "it's not me.  It wasn't me."  McClaren then conducted a pat-down search of the defendant and felt objects, including a hard object, in the defendant's pocket.  When McClaren asked the defendant what was in the pocket, he replied, "[p]lease mister, please don't put anything in my pocket."  McClaren asked the defendant again what was in the pocket and the defendant replied, "I don't know."  McClaren then asked the defendant if he had "permission to go into [the defendant's] pocket," and the defendant replied, "[s]ure, you do."  McClaren found seven individual bags of crack cocaine in the defendant's pocket.

Based on the foregoing evidence, the trial court overruled the defendant's motion to suppress the cocaine.

At trial, McClaren testified that he had recovered seven baggies containing 3.4 grams of cocaine from the defendant and that the packaging and quantity of the cocaine were consistent with distribution.  The trial court found the defendant guilty of possession of cocaine with intent to distribute, a second or subsequent conviction.

A police officer may lawfully stop and frisk an individual if the officer possesses a reasonable suspicion, based on articulable facts, that the individual is or is about to be engaged in criminal activity.  Terry v. Ohio, 392 U.S. 1, 30 (1968).  The standard for conducting such a detention is less than probable cause, but more than an "inchoate and

unparticularized suspicion or `hunch.'" Moss v. Commonwealth, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988) (quoting Terry, 392 U.S. at 27). "Once the police officer has properly detained a suspect for questioning, he may conduct a limited pat-down search of the suspect's outer clothing to search for weapons if the officer reasonably believes, based on specific and articulable facts, that the suspect might be armed and dangerous." Phillips v. Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993).

In considering whether facts based on an anonymous tip are sufficient to provide a police officer a reason to suspect criminal activity, the United States Supreme Court has stated that "anonymous [information that has] been sufficiently corroborated [may] furnish reasonable suspicion . . . [justifying an] investigative stop." Alabama v. White, 496 U.S. 325, 331 (1990). Applying Alabama v. White, we have held that although the police do not have to verify every detail provided by an anonymous tipster, "[s]ignificant aspects of the informer's information must be independently corroborated." Bulatko v. Commonwealth, 16 Va. App. 135, 137, 428 S.E.2d 306, 307 (1993). See also Johnson v. Commonwealth, 20 Va. App. 49, 54, 455 S.E.2d 261, 264 (1995) (holding that Terry stop was valid because known reliable "informants provided detailed, predictive information that the officers were able to corroborate").

Here, the tipster provided a detailed description of the individual, the car, the location, and the nature of the illegal

activity in which the individual was engaged.  Although Officer McClaren did not observe the defendant engaged in illegal activity, McClaren verified certain details of what the tipster observed within moments after receiving the detailed account. McClaren verified that the defendant matched the physical description, wore clothes, and occupied a vehicle matching the description given by the tipster.

Admittedly, the facts as related by the caller could have been "easily obtained" by a casual observer. Alabama v. White, 496 U.S. at 332; see Hardy v. Commonwealth, 11 Va. App. 433, 436, 399 S.E.2d 27, 29 (1990) (holding that verification of "innocent" behavior is not sufficient to establish probable cause). In that vein, the Supreme Court noted in Alabama v. White that in evaluating the informer's reliability that "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Alabama v. White, 496 U.S. at 332 (quoting Illinois v. Gates, 462 U.S. 213, 245 (1983)). The Court noted, however, that reasonable suspicion depends upon "the content of information possessed by [the] police" as well as its reliability. Id. at 330. Accordingly, a detailed description, like that given here, by a caller who appears to have been a concerned citizen who recently observed a person hailing motorists to sell drugs, together with immediate verification of aspects of the

description are important factors to consider in determining whether the officer had reasonable suspicion, even when the description contains facts that are "easily obtained."  See Draper v. United States, 358 U.S. 307 (1959).

This Court has held that Alabama v. White does not preclude a finding of reasonable suspicion when the anonymous tipster does "not provid[e] the government with information that predicts the future actions of the [defendant], if some other indicia of reliability of the informant exists."  Beckner v. Commonwealth, 15 Va. App. 533, 535, 425 S.E.2d 530, 531 (1993).

It is well established that whether reasonable suspicion "exists to warrant an investigatory stop is determined by the totality of the circumstances."  Smith v. Commonwealth, 12 Va. App. 1100, 1103, 407 S.E.2d 49, 51 (1991).

> The circumstances we may consider include "the `characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence."

Id., 407 S.E.2d at 51-52 (quoting Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987) (quoting United States v. Bull, 565 F.2d 869, 870-71 (4th Cir. 1977), cert. denied, 435 U.S. 946 (1978))).  These circumstances are also relevant in determining the reliability of an anonymous informant.

In the present case, Officer McClaren found the defendant alone around 2:00 a.m.  McClaren testified that "we always receive complaints of drug dealing in the area of [the 1700 block

of] Carlyle Avenue."  He also observed further suspicious behavior by the defendant.  McClaren testified that "when [the defendant] looked in my direction and saw me he immediately began walking away from the vehicle and began walking down Carlyle Avenue."  The defendant walked away from McClaren and looked over his shoulder.  When McClaren pulled his patrol car along side the defendant and said, "good morning,"  the defendant replied, "what," and according to McClaren, seemed "slightly agitated."  The defendant had one of his hands slightly behind his back, and McClaren commanded him to "[s]how me the other hand."  The defendant refused to show his hands until McClaren exited his patrol car and drew his weapon.

In Smith v. Commonwealth, the police officer saw Smith shortly after 10:00 p.m. on a playground that had a reputation as a place where drugs were prevalent.  When Smith looked in the officer's direction, Smith suddenly placed something in his front pants pocket.  We held that the officer's observations were insufficient to warrant an investigatory stop.  Smith, 12 Va. App. at 1104, 407 S.E.2d at 52; see also Goodwin v. Commonwealth, 11 Va. App. 363, 367, 398 S.E.2d 690, 692 (1990); Moss, 7 Va. App. at 308, 373 S.E.2d at 172.

In the present case, however, Officer McClaren observed the defendant at 2:00 a.m., in a known drug area, walking away from a car he had previously occupied.  As he walked away, he looked over his shoulder repeatedly at Officer McClaren.  Although

McClaren did not observe the defendant flagging down cars or engaging in other activity consistent with drug distribution, the fact that the defendant exited his car and acted nervously upon noticing the police tends to add credence to the officer's suspicion that the defendant was the person the tipster had described as flagging down vehicles and offering to sell the occupants drugs. The defendant's behavior thus tended to support the informer's report. Based upon the details of the informer's tip concerning the defendant's conduct in hailing motorists offering to sell drugs, the detailed description of the defendant, and Officer McClaren's independent observations and partial verification, McClaren had reason to suspect that the defendant was engaged in selling drugs. See Draper, 358 U.S. 307. Therefore, when McClaren stopped the defendant he had reason to detain the defendant temporarily in order to inquire about his activities and to investigate whether defendant was engaged in criminal activity.

Officer McClaren stated during cross-examination that he requested and was granted permission to search the defendant's pockets. The trial court found that the defendant granted "clear permission . . . for entry into [his] pockets." "The test of a valid consent search is whether it was `freely and voluntarily given.'" Deer v. Commonwealth, 17 Va. App. 730, 734, 441 S.E.2d 33, 36 (1994) (quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). The Commonwealth must demonstrate that the consent

was not the product of duress, and "[t]he question of whether a particular `consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.'" Id. at 735, 441 S.E.2d at 36 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).

Here, Officer McClaren conducted a valid Terry stop. Although he drew his weapon when the defendant did not show both hands, he reholstered the gun before asking for permission to search the defendant's pockets. McClaren informed the defendant that he was investigating a report of drug dealing and that the defendant would be free to go if there were no problems. On these facts, the trial court's finding that the defendant voluntarily consented to the search of his pockets was not "clearly erroneous." Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989) (en banc), cert. denied, 495 U.S. 905 (1990).

The defendant also contends that the evidence was insufficient to prove that he intended to distribute the cocaine seized from him. On appeal, the evidence is "viewed in the light most favorable to the Commonwealth, and given all reasonable inferences fairly deducible therefrom." Albert v. Commonwealth, 2 Va. App. 734, 741-42, 347 S.E.2d 534, 538 (1986). This Court will not disturb the trial judge's verdict "unless it is plainly wrong or without evidence to support it." Id. at 742, 347 S.E.2d

at 538-39.

"When the proof of intent to distribute narcotics rests upon circumstantial evidence, the quantity which the defendant possesses may indicate the purpose for which it is possessed. Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it." Iglesias v. Commonwealth, 7 Va. App. 93, 110, 372 S.E.2d 170, 180 (1988) (en banc) (citations omitted). At trial, Officer McClaren testified that, based upon his training and experience, he believed that possession of 3.4 grams of cocaine was consistent with distribution, not personal use. Moreover, McClaren also testified that the method of packaging of the cocaine seized from the defendant was consistent with distribution. See Early v. Commonwealth, 10 Va. App. 219, 222, 391 S.E.2d 340, 341-42 (1990). Although Officer McClaren testified on cross-examination that it was conceivable that an individual with "a serious addiction" could consume around three grams of cocaine in two days, we hold that his testimony, viewed in the light most favorable to the Commonwealth, was sufficient to prove intent to distribute.

In addition to testifying that the amount of cocaine seized and the method of packaging were consistent with distribution, McClaren also testified that the tipster reported that an individual was "standing in the street waving down motorists [and] asking them if they wanted to purchase drugs." Although

- 10 -

the tipster's statement was inadmissible hearsay, <u>see</u> <u>Arnold v. Commonwealth</u>, 4 Va. App. 275, 279-80, 356 S.E.2d 847, 850 (1987), the defendant failed to object to the statement at the time it was offered into evidence. <u>See</u> <u>Burns v. Board of Supervisors</u>, 227 Va. 354, 363, 315 S.E.2d 856, 862 (1984) (holding that failure to object to the admission of the statement constitutes a waiver of the hearsay objection). Therefore, the statement was properly before the trial court and was relevant to prove the defendant's guilt.

Because the anonymous tip was sufficiently corroborated, Officer McClaren had reasonable suspicion to conduct a <u>Terry</u> investigatory stop. The seizure of the cocaine was valid because the defendant voluntarily consented to the search of his pockets. Therefore, the trial court did not err by overruling the defendant's motion to suppress the cocaine. Moreover, the evidence was sufficient to prove that the defendant intended to distribute the cocaine seized from him. Accordingly, we affirm the defendant's conviction.

<u>Affirmed.</u>

BENTON, J., dissenting.


The evidence proved that the police dispatcher relayed an anonymous telephone tip to the officer. The officer acted on the tip and stopped Gregory. However, the officer did not know the tipster and had no basis to believe the tipster was honest or reliable. The evidence failed to establish that the anonymous tipster was reliable. Thus, the evidence failed to prove that the officer had a reasonable articulable suspicion to support a Terry stop.

The principle is well established that "[t]he informant must provide some basis for his knowledge before the police officer relies upon it as being reliable enough to support an investigatory stop." Beckner v. Commonwealth, 15 Va. App. 533, 537, 425 S.E.2d 530, 533 (1993). In a case involving an anonymous tip, the Supreme Court ruled as follows in upholding a Terry stop:

> [T]he independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller.
>
> [It is] also important that, as in [Illinois v. Gates, 462 U.S. 213 (1983)], "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Id., at 245. . . . What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information – a special familiarity with respondent's affairs.

Alabama v. White, 496 U.S. 325, 332 (1990). Despite the predictive nature of the tip and the corroboration, the Court nonetheless concluded that "it [was] a close case." Id.

Although this Court, in dicta, has stated that reasonable suspicion may exist even if the anonymous tipster does not "provid[e] the government with information that predicts the future actions of the [defendant]," that statement was premised upon proof in the record that "some other indicia of reliability of the informant exists." Beckner, 15 Va. App. at 535, 425 S.E.2d at 531. In the absence of predictive information, the ingredient that allowed the Supreme Court in White to infer that the content of the information "demonstrated [the tipster had] . . . a special familiarity with the [suspect's] affairs," 496 U.S. at 332, the Commonwealth must prove that the tipster had a special familiarity with the details of Gregory's affairs. Only then will the evidence support the anonymous tipster's reliability through other "indicia." See id. at 329-32.

The tip that the officer acted upon when he stopped Gregory "'provide[d] virtually nothing from which one might conclude that [the tipster was] either honest or his information reliable.'" 496 U.S. at 329. Nothing intrinsic to the tip reasonably allowed the officer to draw conclusions of honesty or reliability. The tip did not contain any information that indicated the tipster had a familiarity with Gregory's affairs. The tip neither predicted his future behavior nor contained "a range of details

- 13 -

relating not just to easily obtained facts and conditions existing at the time of the tip." White, 496 U.S. at 332.

The substance of the tip might support an inference that the tipster saw Gregory in the vicinity. However, the tip did not convey any other information upon which an inference of guilt could have been made. The tipster might have been someone who merely bore a grudge against Gregory, or a practical joker, or another suspicious police officer. The record does not disclose any information concerning the tipster and contains no basis upon which to conclude that the tipster "appears to have been a concerned citizen." Precisely because someone can easily harass another person, the Supreme Court has stated that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." White, 496 U.S. at 330.

To guard against that same mischief, this Court barred Terry stops based on tips that reflected no more than a suspicion or a hunch of criminal activity.

> The facts that the police rely upon must amount to more than an "inchoate and unparticularized suspicion or 'hunch.'" Here, the informant's tip did not provide a range of detail that would elevate what may have been a mere "hunch" to a reasonable suspicion. If a hunch is not enough for a police officer to effectuate a stop, it follows that the hunch of an unnamed informant, albeit an informant with some indicia of personal reliability, is also not sufficient. The fact that the informant's hunch is conveyed to the police officer does

> not raise the hunch to the level of
> reasonable suspicion.  "Manifestly, this
> conduct falls below activity necessary to
> justify a reasonable suspicion that a
> violation of law had occurred or was
> occurring."

Beckner, 15 Va. App. at 537, 425 S.E.2d at 533 (citations

omitted).  The tip in this case neither established that the

caller was "honest [nor] his information reliable," White, 496

U.S. at 329, nor negated the hypothesis that the tip was based

solely on the observer's hunch.  Beckner, 15 Va. App. at 537, 425

S.E.2d at 533.  "[S]omething more" than the tip was necessary to

establish reasonable suspicion in this case.  White, 496 U.S. at

329 (quoting Illinois v. Gates, 462 U.S. 213, 227 (1983)).

The Commonwealth attempted to establish the tipster's

reliability by showing that the officer corroborated aspects of

the tip by the officer's independent observations.  Although the

officer testified that he observed facts reported by the tipster,

he observed nothing more than any uninformed tipster might have

seen.  The criminal conduct that the tipster reported, which may

have been embellished because of a hunch, was not observed by the

officer.

The record established that the anonymous tipster described

a person to the police dispatcher and informed the dispatcher

that the person was "standing out in the roadway flagging

motorists down to ask them if they wanted to buy drugs."  When

the officer arrived at the particular street, he saw a man

sitting in a vehicle and dressed as described by the tipster.

The officer saw no criminal or unusual activity.  Thus, the officer did not corroborate in any manner the tipster's report of illegal conduct.  The Commonwealth's assertion that "[c]learly the officer reasonably inferred that the [tipster] had observed [Gregory] in the act of selling drugs" is baseless.  This record provides no foundation from which any such inference could have been drawn.  Before the officer stopped Gregory, the officer observed "nothing more than innocent details which any casual observer could have given. . . .  Anyone who saw [Gregory] . . . that day could have given the same description of him."  Hardy v. Commonwealth, 11 Va. App. 433, 435, 399 S.E.2d 27, 28 (1990).

The corroboration the Commonwealth relies upon consists of wholly innocent activity that would normally not command the attention of the police.  These facts do not provide a basis to conclude that the tipster was reliable and certainly do not negate the hypothesis that the tipster's report was any more than a hunch of criminal activity.  See Beckner, 15 Va. App. at 537, 425 S.E.2d at 533.  The only reasonable inference to draw from these facts is that the tipster saw Gregory in the area, nothing more.  Conceding that the officer did not observe Gregory approaching passing vehicles or engaging in other activity consistent with drug distribution, the majority concludes that Gregory's departure from his car and "nervous" demeanor added credence to the tipster's report that a similarly dressed person had been offering to sell drugs.  I fail to see the connection.

Nothing that the officer observed in Gregory's behavior supported the tipster's report. When Gregory walked away from his vehicle and watched the police vehicle, he was engaged in perfectly lawful activity. We have no idea why Gregory acted as he did. However, he had a right to walk away from a police officer unless the police officer had grounds to detain him. The circular nature of the majority's reasoning is obvious. If you walk away from a police officer, you can't be stopped except upon reasonable suspicion, but if you walk away, ipse dixit, you have given the officer reasonable suspicion.

In Smith v. Commonwealth, 12 Va. App. 1100, 407 S.E.2d 49 (1991), a police officer saw Smith shortly after 10:00 p.m. on a playground that had a reputation as a place where drugs were prevalent. When Smith looked in the officer's direction, Smith suddenly placed something in his pants pocket. This Court held that the officer's observations of "suspicious" activity were not sufficient to warrant an investigatory stop. 12 Va. App. at 1104, 407 S.E.2d at 52. See also Goodwin v. Commonwealth, 11 Va. App. 363, 367, 398 S.E.2d 690, 692 (1990); Moss v. Commonwealth, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988). Likewise, the evidence in this record does not support the trial judge's finding that Gregory was lawfully stopped. I would hold that the trial judge erred in refusing to suppress the evidence.

Furthermore, the evidence in this case failed to prove beyond a reasonable doubt that Gregory intended to distribute the

cocaine that was seized.  The Commonwealth's proof of intent to distribute was based primarily upon the following testimony of the arresting officer:

> Q  Seven individual baggies with how much weight?
>
> A  3.4 grams.
>
> Q  Based upon your training and experience, is that method of packaging with that weight, is that consistent with personal use or distribution?
>
> A  Distribution.
>
> Q  You base that on your years of working in the property section and your training and experience as a police officer?
>
> A  Yes, sir.

The officer admitted, however, that a user of cocaine could personally consume three grams of cocaine in two days.  On cross-examination, the officer was unable to testify as to the usage of a typical addicted person.

> Q  Officer, based on your training and experience, how much crack cocaine could an individual smoke in a day if they're an addict?
>
> A  If they're an addict?
>
> Q  Yes.
>
> A  Well, I couldn't really go into as far as what personal consumption would be for an individual.

The relatively small quantity of cocaine warrants the inference that Gregory possessed it for his personal use.  See Dukes v. Commonwealth, 227 Va. 119, 122-23, 313 S.E.2d 382, 384

- 18 -

(1984).  Moreover, no other evidence indicated an intent to distribute.  The individual packages of cocaine were not unique.  "The mode of packaging and the way the packages were hidden are as consistent with possession for personal use as they are with intent to distribute."  Id. at 123, 313 S.E.2d at 384.

For these reasons, I would also hold that the evidence failed to prove beyond a reasonable doubt that Gregory possessed the cocaine with intent to distribute.  Thus, I would reverse the conviction.