COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Beales and Chafin
Argued at Richmond, Virginia

UNPUBLISHED

TYLER JAMES CREEKMORE

MEMORANDUM OPINION[*] BY
v.     Record No. 1727-12-2          JUDGE TERESA M. CHAFIN
FEBRUARY 11, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
J. Martin Bass, Judge

Jesse R. Binnall (Bronley & Binnall, PLLC, on brief), for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.

Tyler James Creekmore ("Creekmore") was convicted of driving on a suspended or revoked license, third or subsequent offense, in violation of Code § 46.2-301. On appeal of the denial of his motion to suppress, he assigns error to the trial court's findings that he voluntarily stopped his vehicle and that the deputy had a reasonable, articulable suspicion to execute a stop.[1] Appellant maintains that he was improperly detained before reasonable, articulable suspicion arose.[2] We disagree.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We note at the outset that Creekmore assigns error to the trial court's finding that the officer had reasonable, articulable suspicion to stop him; however, the trial court found the initial encounter to be consensual, and therefore did not decide the case on reasonable suspicion grounds.

[2] At oral argument, Creekmore conceded that reasonable suspicion for an investigative detention arose once the officer learned that Creekmore had been driving without his driver's license.

BACKGROUND

On March 13, 2012, at approximately 11:15 p.m., Deputy Keith Dobson was parked in his marked sheriff's car, pointing outbound, at the entrance to a cul-de-sac in an undeveloped area of a subdivision. No houses had been built on this particular street, and the cul-de-sac abutted a wooded area. That night, Dobson observed a dark-colored Nissan drive into the cul-de-sac past his vehicle. He illuminated his cruiser's spotlight in order to see the vehicle and its occupants, and then turned the spotlight off as the vehicle drove past him. The Nissan made its way around the cul-de-sac before coming to a stop at an angle behind the rear passenger corner of Dobson's vehicle.

Dobson then exited his vehicle and, shining a flashlight toward the Nissan, approached the driver's side door. Creekmore, the driver, rolled down the window as Dobson approached. In a conversational tone, Dobson asked Creekmore what he was doing, to which Creekmore responded that he was looking for a restroom because he just left work and his employer refused to let him use the restroom on site. Dobson then asked if he "could see [Creekmore's] driver's license to let [his] dispatch know who [he] spoke with . . . because [he] had radioed in that [he] was out talking to the vehicle stopped at Sage Court." Creekmore replied that he did not have his driver's license with him, so Dobson took his name and date of birth. At that point, Dobson also asked for Creekmore's vehicle registration because he "intended to issue a summons for driving without a license." Upon running Creekmore's information, Dobson learned that Creekmore's driver's license had been revoked. Dobson subsequently issued him a ticket for driving on a revoked or suspended license, third or subsequent offense.

Creekmore was convicted in general district court and noted an appeal to the Circuit Court of King George County. He filed a pre-trial motion "to suppress the stop that resulted in [his] prosecution," asserting that Dobson did not have a reasonable, articulable suspicion to stop

him. The trial court denied the motion, finding that Dobson did not effectuate a stop of Creekmore because he exhibited no display of force or authority in an effort to stop the vehicle; rather, appellant stopped his vehicle voluntarily. Further, the trial court held that once Dobson became aware that Creekmore did not have his driver's license with him, Dobson then had a "reasonable, articulable suspicion that [he] was committing an act that was in violation of, at least, the traffic laws."

At the subsequent bench trial, the court convicted Creekmore of driving on a revoked or suspended license, third or subsequent offense. Appellant now appeals the denial of his motion to suppress.

ANALYSIS

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). While we are bound to review *de novo* the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error[3] and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

I.

The Commonwealth points out as an initial matter that, in appellant's opening brief, he reworded his original assignments of error. Rule 5A:12(c)(1)(i) provides that "[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court." "While it

---

[3] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'" McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (citations omitted).

is improper for an appellant to alter the wording of an assignment of error from that stated in the petition for appeal, non-substantive changes to an assignment of error . . . do not default the issue raised." Dowdy v. Commonwealth, 278 Va. 577, 590 n.14, 686 S.E.2d 710, 717 n.14 (2009) (citing Allstate Ins. Co. v. Gauthier, 273 Va. 416, 418 n.*, 641 S.E.2d 101, 103 n.* (2007)).

The Commonwealth submits, and we agree, that the assignments of error present substantially the same issues, but we note that we will not consider any arguments outside the scope of those assignments granted in the petition for appeal.[4]

## II.

Virginia jurisprudence recognizes three forms of police-citizen encounters:

> First, there are consensual encounters which do not implicate the Fourth Amendment. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (internal citations omitted).

With regards to consensual encounters, "[t]he Fourth Amendment does not require any level of suspicion to justify non-coercive questioning by officers, including a request for identification." Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012). See United States v. Drayton, 536 U.S. 194, 200-01 (2002); Montague v. Commonwealth, 278 Va.

---

[4] The assignments of error contained in the petition for appeal were as follows: "1. The Trial Court erred in finding that there was no stop of [appellant] by the Officer," and "2. The Trial Court erred in finding that the Officer had reasonable articulable suspicion to stop [appellant]."

The assignments of error in the opening brief were changed to the following: "1. The trial court erred when it found that [appellant] voluntarily stopped his vehicle, though a uniformed Officer directed his spotlight upon [appellant's] vehicle in a[n] empty, dark cul-de-sac and was approaching [appellant's] vehicle," and "2. The trial court erred when it found that the Officer had reasonable, articulable suspicion to execute a stop after [appellant] could not produce a valid drivers license, though the Officer had already detained [appellant] solely on the grounds he was turning around in a[n] empty cul-de-sac late in the evening."

532, 538, 684 S.E.2d 583, 587 (2009). "[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." I.N.S. v. Delgado, 466 U.S. 210, 216 (1984). "While most citizens will respond to a police request, the fact that people do so, and do so without being told that they are free not to respond, hardly eliminates the consensual nature of the response." Id.

"In order for a seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority." Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997) (*en banc*).

> [A] consensual encounter between the police and a citizen becomes a seizure for Fourth Amendment purposes "only if, in view of all the circumstances surrounding the incident, a *reasonable person* would have believed that he was not free to leave." In order for a seizure to occur, the police must restrain a citizen's freedom of movement by the use of physical force or show of authority.

Ford v. City of Newport News, 23 Va. App. 137, 142, 474 S.E.2d 848, 850 (1996) (quoting Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 648 (1992)).

A brief investigatory stop by a police officer is constitutional "'when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" Branham, 283 Va. at 279, 720 S.E.2d at 78 (quoting Bass v. Commonwealth, 259 Va. 470, 474-75, 525 S.E.2d 921, 923 (2000)). Whether an officer had a "particularized and objective basis for suspecting that the person stopped may be involved in criminal activity" is a totality of the circumstances determination. Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 465 (2003) (citing Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722-23 (1997)).

> The Supreme Court has detailed examples of circumstances that may indicate that a seizure has occurred. Such examples include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."

- 5 -

McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 545 (2001) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

In the present case, considering the totality of the circumstances and viewing the facts in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, we conclude that the initial encounter between Dobson and Creekmore was consensual and that any investigative stop for Fourth Amendment purposes occurred only after Deputy Dobson's discovery that Creekmore had been operating his vehicle without his driver's license.

Creekmore asserts that he was stopped when Deputy Dobson obstructed his egress from the cul-de-sac, shined the spotlight on his vehicle, and asked for his driver's license. In arguing that he was stopped by Dobson's use of the spotlight, Creekmore contends the spotlight forced him to stop because the light inhibited his vision and therefore his ability to drive safely. However, Dobson testified at the hearing on the motion to suppress that he turned off his spotlight as the vehicle drove past him, eliminating the purported hindrance on Creekmore's vision. Further, appellant cites no authority for the proposition that an officer's use of a spotlight equates to a stop, or even a display of authority.[5] Even if we considered Dobson's use of his spotlight as a show of police authority, appellant did not submit to it. "A seizure does not occur in the absence of physical force used by a law enforcement officer or a defendant's submission to an officer's assertion of authority." Id. at 491, 545 S.E.2d at 546. See Florida v. Bostick, 501 U.S. 429, 434 (1991); California v. Hodari D., 499 U.S. 621 (1991); Washington v.

---

[5] Our Supreme Court has held that shining a floodlight on an individual and telling him to "come over here" is not such an "intimidating" show of authority as to render an initial encounter to be a seizure. Baldwin v. Commonwealth, 243 Va. 191, 199, 413 S.E.2d 645, 649 (1992). In contrast, this Court has held that a sudden confrontation by an officer with a bright flashlight that has "an effect of blinding the other parties, which stuns them," can be a seizure. Moss v. Commonwealth, 7 Va. App. 305, 307, 373 S.E.2d 170, 172 (1988). However, Moss can be distinguished from the present case based on its facts, as it was in Beasley v. Commonwealth, 60 Va. App. 381, 728 S.E.2d 499 (2012) (holding that nothing in the record supported the "conclusion that the 'right side alley light' of [the officer's] patrol car was so intensely bright as to blind and stun the occupants of the minivan").

Commonwealth, 29 Va. App. 5, 10-11, 509 S.E.2d 512, 514 (1999).  Instead of stopping when Dobson activated the spotlight, Creekmore continued on his course around the cul-de-sac and came to a stop behind Dobson's vehicle only after the spotlight had been deactivated.  Thus, it cannot be said that the officer's use of the spotlight stopped Creekmore for Fourth Amendment purposes.

The contention that Dobson effected a stop by preventing Creekmore from exiting the cul-de-sac fails as well.  Dobson's vehicle remained parked throughout the entire scenario.  A diagram presented at the hearing on the motion to suppress shows Dobson's vehicle parked at an angle near the exit, and Dobson testified that he was not in a position that blocked Creekmore's progress.  Creekmore was able to drive into the cul-de-sac past Dobson's vehicle; therefore, there was ample room for him to drive back out of the cul-de-sac.  Simply because he was unable to "safely complete a U-turn without stopping" does not prevent him from completing any number of other legal driving maneuvers to continue on his way where his departure is otherwise unobstructed.  See Branham, 283 Va. at 277, 720 S.E.2d at 76 (holding no seizure occurred where the officers parked behind defendant's vehicle "in such a way as not to obstruct its departure if [defendant] had desired to leave"); Amin v. Cnty. of Henrico, 61 Va. App. 67, 77, 733 S.E.2d 661, 666 (2012) (no seizure where police "left enough room for [defendant] to pull his car out"); Jones v. Commonwealth, 52 Va. App. 548, 553, 665 S.E.2d 261, 263 (2008) (finding initial encounter consensual where police vehicle "was not blocking [defendant's vehicle]").  Instead, Creekmore chose to come to a stop behind Dobson's vehicle.  In light of these facts, the record supports the trial court's conclusion that he stopped voluntarily.

At this point, Dobson exited the vehicle and engaged in conversation with Creekmore.  After inquiring as to what Creekmore was doing in the undeveloped cul-de-sac, Dobson asked to see Creekmore's driver's license so that he could identify him.  Creekmore cites to Brown v.

Commonwealth, 17 Va. App. 694, 440 S.E.2d 619 (1994), for the argument that once an officer asks for an individual's operator's license, that individual is no longer free to leave and is temporarily seized. In Brown, this Court held that the "exercise of police power pursuant to Code § 46.2-104, the act of requiring a person who has been operating a motor vehicle upon the public highways to produce an operator's license, is a restraint upon the individual's freedom of movement and constitutes a seizure of the person." Id. at 697, 440 S.E.2d at 621. However, the Supreme Court has more recently said that the requirement of Code § 46.2-104 to exhibit a driver's license upon request "applies only when such a driver has received a signal to stop from a law-enforcement officer." Branham, 283 Va. at 280, 720 S.E.2d at 78. Where there is no signal to stop, a request to see an individual's driver's license is no more than a request, and the individual's compliance is then voluntary. Id.

In this case, Creekmore received no signal to stop. Deputy Dobson did not activate his blue lights or his siren, he made no hand gestures directed at appellant, and he did not draw his weapon. The only action taken by Dobson was to illuminate his spotlight and shine it on the vehicle as it entered the cul-de-sac. As previously mentioned, Dobson testified that he turned off his spotlight as Creekmore drove past him, and Creekmore stopped his vehicle behind Dobson's vehicle only after the spotlight was deactivated. Since Creekmore did not stop in response to a signal from a law enforcement officer, Dobson was not exercising any police power pursuant to Code § 46.2-104. Absent an exercise of police power, Dobson's request to see Creekmore's driver's license was merely a request. His compliance was therefore voluntary, and he complied by volunteering that he did not have his driver's license.

Creekmore further cites to Richmond v. Commonwealth, 22 Va. App. 257, 468 S.E.2d 708 (1996), for the related proposition that a reasonable person would not feel free to leave where an officer retains that person's driver's license while running a record check because Code

§ 46.2-104 prohibits a vehicle operator from driving without a license. Here, he had no driver's license for Deputy Dobson to retain. However, the principle could be said to apply to an individual's registration card as well, because Code § 46.2-104 also prohibits driving without one's registration card. If, for that reason, a reasonable person would not feel free to leave when an officer retains his driver's license, then a reasonable person would also not feel free to leave when an officer retains his registration.

It is unclear from the record whether Dobson retained Creekmore's registration while running a record check. Even assuming that he did, Dobson had already discovered that Creekmore had been driving without his driver's license, and he testified that he asked for registration because he "intended to issue a summons for driving without a license." Thus, we agree with the trial court, and Creekmore conceded at oral argument, that Dobson then had more than a reasonable suspicion that Creekmore had violated the traffic laws in his presence, and therefore Dobson had sufficient grounds to detain Creekmore for an investigative stop at that time. For these reasons, any evidence discovered as a result of this stop that pertains to his conviction was properly obtained and it is unnecessary to consider the argument that the exclusionary rule applies.

CONCLUSION

Based on the foregoing conclusions, we hold that the trial court did not err in denying the motion to suppress. The initial encounter between Creekmore and Dobson was consensual in nature. Upon request, Creekmore volunteered that he did not have his driver's license. Having seen Creekmore drive into the cul-de-sac, Dobson then had a reasonable suspicion that Creekmore had violated the traffic laws by driving without his license, a suspicion that justified

an investigative detention.  It was after Dobson developed this suspicion that he discovered

Creekmore's revoked status and subsequently detained him.

Affirmed.